[Cite as *State v. Campbell*, 2014-Ohio-5315.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2014-02-048 |
| Plaintiff-Appellee, | : | CA2014-02-051 |
| | : | O P I N I O N |
| - vs - | | 12/1/2014 |
| | : | |
| BILLY S. CAMPBELL, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-08-1321


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Meeks and Thomas Co., LPA, David H. Thomas, 511 South High Street, Columbus, Ohio 43215, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Billy Campbell, appeals his conviction and sentence in the Butler County Court of Common Pleas for trafficking in heroin.

{¶ 2} The Butler County Undercover Regional Narcotics Unit (BURN) received a tip from a confidential informant that Campbell was transporting heroin from the East Coast to Ohio. The informant gave BURN agents Campbell's name and address, along with information that several heroin overdoses in the area could be attributed to the heroin

Campbell was selling. Agents also learned that Campbell would rent a car, and take his family with him on the trip to the East Coast to retrieve the heroin, usually in and around the Boston, Massachusetts area. Campbell's family included his wife and two children, ages 14 and six. BURN agents received similar information from other trusted informants and cooperating defendants, including that Campbell was soon to go to Boston for a large heroin purchase and would be bringing the heroin back to Ohio.

{¶ 3} BURN agents began an investigation, which included surveillance on Campbell's home. Agents learned from other confidential informants that Campbell was about to take a trip to Boston to purchase heroin, and through surveillance, confirmed that a rental car was located at Campbell's home. Campbell, along with his wife and two children, then left for Boston in the rental car.

{¶ 4} Once the car had departed, agents continued their investigation and performed a trash-pull at Campbell's residence. During the trash-pull, agents located a paper that listed various phone numbers. Agents received a warrant related to Campbell's cellular phone, allowing them to "ping" the cell phone in order to determine Campbell's physical location. However, when the number associated with Campbell was found to be invalid, agents received a warrant associated with another phone number that was listed on the paper found during the trash-pull, which subsequently was discovered to belong to Campbell's wife. Agents "pinged" the phone belonging to Campbell's wife, and determined that the phone was located in Massachusetts. Agents later traced the pings from Massachusetts to Ohio as the Campbells traveled back toward Butler County.

{¶ 5} Agents shared information learned from the investigation with the Butler County Sheriff's Office regarding the confidential informants' tips and surveillance of Campbell's residence. Butler County officers then became involved in the investigation and offered assistance in performing an investigatory stop when Campbell returned from Boston to the

Butler County area.

{¶ 6}   After following the Campbells' rental car, BURN agents instructed an officer to pull over Campbell's car for an investigatory stop.  An officer pulled the car over, and within a few minutes, a canine officer arrived on the scene and walked his canine partner around Campbell's car.  The canine alerted to the presence of drugs, and officers found marijuana in the driver's-side door as well as heroin in a suitcase located in the rental car's trunk.  Campbell was immediately given his *Miranda* warnings as he stood on the side of the road.  Campbell was then taken to the police station, where he spoke with one of the agents after being re-advised of his *Miranda* rights.

{¶ 7}   Campbell was arrested and charged with trafficking in heroin, as well as possession of heroin.  Campbell filed a motion to suppress, asking the court to suppress the heroin seized during the investigatory stop, as well as statements he made to the agents.  After a hearing on the issue, the trial court overruled Campbell's motion to suppress.  Campbell then pled no contest to the charges, and the trial court found him guilty of both counts.  The trial court merged the charges for purposes of sentencing, and sentenced Campbell to a mandatory prison term of 11 years.  The trial court also ordered that Campbell's car be forfeited.  Campbell now appeals his conviction and sentence, raising the following assignments of error.  As they are interrelated, we will address Campbell's first and second assignments of error together.

{¶ 8}   Assignment of Error No. 1:

{¶ 9}   THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE GPS PINGING INFORMATION USED TO LOCATE THE APPELLANT WAS AN ILLEGAL SEARCH, THEREBY VIOLATING APPELLANT'S RIGHT TO A FAIR TRIAL, RIGHT TO DUE PROCESS OF LAW, AND RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, AS GUARANTEED BY THE

FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND COMPARABLE PROVISIONS TO THE OHIO CONSTITUTION, AS WELL AS THE OHIO RULES OF CRIMINAL PROCEDURE AND OHIO REVISED CODE.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BY UPHOLDING THE WARRANTLESS SEARCH AND SEIZURE OF APPELLANT'S VEHICLE, DESPITE THE LACK OF ANY TRAFFIC VIOLATION OR THE PRESENCE OF ANY OTHER REASONABLE SUSPICION, AND THEREBY VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL, RIGHT TO DUE PROCESS OF LAW, AND RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, AS GUARANTEED BY THE FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶ 12} Campbell argues in his first two assignments of error that the trial court erred in denying his motion to suppress the evidence seized as a result of the vehicle search.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

**{¶ 14}** Campbell asserts that his motion to suppress should have been granted because the police unlawfully used a GPS to locate him by pinging his wife's cell phone, and because the vehicle search was not the result of a traffic violation.[1] We disagree with both of Campbell's arguments.

**{¶ 15}** Regarding the GPS ping, Campbell argues that agents did not have probable cause to support the warrant issued that allowed them to ping the phone to indicate the location of Campbell or his family. However, the record is clear that the phone did not belong to Campbell so that he lacks standing to challenge the validity of the warrant.

**{¶ 16}** Fourth Amendment privacy rights are "personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421 (1978). As such, a person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated. *State v. Coleman*, 45 Ohio St.3d 298, 306 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Thus, in order to challenge a search or seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such expectation. *State v. Renner*, 12th Dist. Clinton No. CA2002-08-033, 2003-Ohio-6550, citing *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547 (1980).

**{¶ 17}** The record is clear that the BURN agents obtained a search warrant for

---

1. Campbell also argues that the trial court erred in denying his motion to suppress because the pinging occurred outside of Ohio when Campbell's family was located in Massachusetts and on their way back to Ohio. However, there has never been settled law in Ohio that use of a GPS or pinging must stop at the Ohio border. The record indicates that the BURN unit applied for the search warrant in Ohio and performed the activity necessary to ping the phone within this jurisdiction. On August 1, 2014, the Ohio Legislature amended Crim.R. 41 by adding a section on tracking devices. The new section, Crim.R. 41(A)(2), provides "the warrant may authorize use of the device to track the movement of a person or property within or outside of the court's territorial jurisdiction, or both." While this rule may not have been in effect at the time BURN agents pinged the phone in this case, the rule change nonetheless demonstrates the clear intent of the Legislature, and codified the realistic application of search and seizure common law to tracking technology across state lines that was in effect at the time of the pinging in this case.

a cell phone belonging to Campbell's wife so that Campbell did not have reasonable expectation of privacy in his wife's phone. The fact that agents pinged the phone belonging to Campbell's wife did not implicate Campbell's personal rights in any way and he cannot raise a challenge to the warrant related to his wife's phone. *See State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 45 (finding that appellant did not have standing to challenge a search involving his codefendants where he "could not challenge the cell phone records of anyone but his own").

{¶ 18} Even if we were to entertain Campbell's argument that his rights were somehow implicated even though the phone belonged to his wife, we would still overrule his argument regarding the cell phone pinging for two reasons. First, Campbell had no reasonable expectation of privacy in the pinging of the phone voluntarily used while traveling on public thoroughfares. *See State v. Taylor*, 2d Dist. Montgomery No. 25764, 2014-Ohio-2550 (affirming trial court's denial of appellant's motion to suppress where appellant had no reasonable expectation of privacy in the pings emitted by the cell phone in appellant's possession); and *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir.2012) (holding that appellant did not have a reasonable expectation of privacy in the data given off by his voluntarily procured cell phone).

{¶ 19} The other reason this court would affirm the denial of Campbell's motion to suppress is because agents had procured a valid search warrant supported by probable cause. The record indicates that agents requested the search warrant to follow the pinging of the cell phone belonging to Campbell's wife, and that such warrant was valid. As we will discuss next in regard to the stop, agents had ample probable cause to investigate, including pinging the cell phone to show its location in or about the Massachusetts area.

{¶ 20} According to Crim.R. 41(C),

(1) A warrant shall issue on either an affidavit or affidavits sworn

to before a judge of a court of record or an affidavit or affidavits communicated to the judge* * *. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. * * *

(2) If the judge is satisfied that probable cause for the search exists, the judge shall issue a warrant identifying the property and naming or describing the person or place to be searched.

{¶ 21} When determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.

{¶ 22} An appellate court should not substitute its judgment for that of the issuing court as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *State v. Akers*, 12th Dist. Butler No. CA2007-07-163, 2008-Ohio-4164. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George,* paragraph two of the syllabus.

{¶ 23} The record is clear that agents offered an affidavit that detailed the information given by their confidential informants and cooperating codefendants, including that Campbell would go to the Massachusetts area to bring heroin back to Ohio, and that Campbell would make such trips with his wife and children. The agents also provided information regarding the cars that Campbell had rented in the past, and that the cars were driven a distance equal to the mileage required to go from Ohio to Massachusetts and back. The information contained in the affidavit supporting the search warrant request supplied the probable cause

necessary to issue the warrant. As such, and for several reasons, the trial court did not err in denying Campbell's motion to suppress evidence resulting from the pinging of his wife's cell phone.

{¶ 24} Regarding the investigatory stop, Campbell argues that officers lacked authority to initiate the stop because the deputy who performed the stop did not have personal knowledge as to the investigation and was merely acting on orders when he initiated the stop. We disagree.

{¶ 25} Ohio recognizes two types of lawful stops, a noninvestigatory stop in which the officer believes a traffic violation has occurred, and an investigatory stop. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 13. The record is undisputed that the agents or other officers did not witness Campbell commit a traffic violation. Instead, the stop was executed solely on information shared by BURN agents, as that information was derived from the investigation, that Campbell possessed heroin in his car.

{¶ 26} Before an investigatory stop may occur, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). "The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity." *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), citing *Terry* at 22.

{¶ 27} Instead of employing an inflexible standard to determine whether an officer has a reasonable suspicion of criminal activity, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Accordingly, "both the content of information possessed by police and its degree of reliability" are pertinent when determining whether there is a reasonable suspicion of criminal activity to justify a stop. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

- 8 -

{¶ 28} The record demonstrates that officers had a reasonable suspicion of criminal activity to justify the stop. Again, the BURN agents received information from reliable informants and codefendants that Campbell was trafficking in heroin. BURN agents interviewed at least seven different informants and cooperating codefendants, all of whom stated that Campbell was responsible for the heroin that was causing several overdoses in the area. Informants provided BURN agents with Campbell's name and address, as well as information that Campbell would rent a car, take his family with him, and travel to the Massachusetts area before returning to Butler County with the heroin.

{¶ 29} BURN agents confirmed several pieces of information as given to them by the informants, including that Campbell rented cars and that a cell phone belonging to his wife was located in the Massachusetts area when Campbell was believed to be on a heroin buying trip. Agents performed surveillance on Campbell to verify information from the informants, including that Campbell was set to go on a large buying trip to the Boston area. Agents learned that there was a rental car at Campbell's residence, and later traced the cell phone pings from Massachusetts back to Ohio.

{¶ 30} While Deputy Erik Betz, the officer who stopped Campbell, did not perform every step of the investigation first hand, we find that he was justified in making the stop. The record indicates that Deputy Betz was involved at the beginning of the investigation by confirming that there was a rental car at Campbell's residence. Deputy Betz testified at the motion to suppress hearing that during the initial phases of the investigation, he passed Campbell's residence, saw a rental car in the drive, and confirmed that it was a rental car by running the license plates. Deputy Betz testified that he shared that information with BURN agents, and that the investigation continued. Deputy Betz became involved again in the investigation when he was on road patrol and was contacted by BURN agents regarding Campbell's travels. BURN agents directed Deputy Betz to pull over Campbell's car, and

Deputy Betz initiated the investigatory stop at the behest of the BURN agents.

{¶ 31} While Campbell argues that Deputy Betz lacked any suspicion that Campbell was involved in drug activity, the record indicates otherwise. Deputy Betz was clearly involved in the beginning of the investigation, and was aware of the circumstances surrounding the BURN investigation into Campbell's activities. Deputy Betz indicated during the motion to suppress hearing that he was in contact with BURN agents, and had spoken to them to relate information regarding the rented car at Campbell's residence and again on the day of the investigatory stop. As such, Deputy Betz had the requisite specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the stop. This is especially true where Deputy Betz was directed by the BURN agents, who had been in charge of the investigation, to initiate the stop. There is no doubt from the record that the stop was a result of multiple officers and their knowledge of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the stop.

{¶ 32} After reviewing the record and considering each of Campbell's arguments, we find that the trial court properly denied Campbell's motion to suppress the evidence seized as a result of the stop. As such, Campbell's first and second assignments of error are overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BY UPHOLDING THE NUMEROUS VIOLATIONS OF THE APPELLANT'S MIRANDA RIGHTS, AND THEREBY VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL, RIGHT TO DUE PROCESS OF LAW, AND RIGHT TO REMAIN SILENT, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶ 35} Campbell argues in his third assignment of error that the trial court erred in denying his motion to suppress because his Fifth Amendment right against self-incrimination was violated.

{¶ 36} It is well-established that before law enforcement officials interrogate a suspect in custody, the suspect must be advised of his *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence. *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130, CA2013-07-113, 2014-Ohio-3449. To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* at ¶ 15, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus.

{¶ 37} During the motion to suppress hearing, a BURN agent testified that he gave Campbell *Miranda* warnings by reading the warnings from a card listing the warnings, as provided by the Drug Enforcement Agency. The agent testified that he issued the warnings once Campbell got out of the car during the investigatory stop and once agents located the marijuana and heroin in the car. The issuance of *Miranda* warnings was witnessed by another agent on the scene, and that agent also testified that Campbell received his *Miranda* warnings. Agents also testified during the motion to suppress hearing that Campbell was issued his *Miranda* warnings a second time at the police station once he was transported there.

{¶ 38} To rebut the state's evidence that Campbell was issued valid *Miranda* warnings,

- 11 -

he argues that the record does not contain a recording demonstrating that he signed a waiver of his rights. The record indicates that some of the recording equipment used by the BURN agents and the Butler County Sheriff's office malfunctioned during Campbell's interview. However, the fact that the recording equipment malfunctioned does not rebut the evidence offered by the state that Campbell was read his *Miranda* rights on two different occasions; once at the scene of the investigatory stop and once when Campbell arrived at the police station for questioning. Nothing in the record indicates that Campbell refused to speak with agents or officers, or that he requested counsel at any time, whether or not the entire interview was recorded.

{¶ 39} Moreover, no Ohio law requires that *Miranda* waivers must be signed or recorded in order to be valid. Instead, this court has recognized that the failure to have a defendant sign a *Miranda* waiver form does not render that waiver invalid. *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754.

{¶ 40} Nor does the record indicate that there was any indicia of an involuntary waiver of rights. No evidence exists on the record that Campbell's age, mentality, or any prior criminal experience impacted his decision to speak with officers. Nor is there any indication that the length, intensity, and frequency of the interrogation resulted in Campbell's decision to answer questions. Nor is there any evidence or suggestion that there was physical deprivation, mistreatment, threat or inducement on the state's part before Campbell spoke with agents on the night of his arrest. Instead, the undisputed evidence was that two agents advised Campbell of his rights, and that Campbell waived those rights knowingly, intelligently, and voluntarily.

{¶ 41} After reviewing the record and considering each of Campbell's arguments, we find that Campbell's Fifth Amendment rights against self-incrimination were not violated. As such, Campbell's final assignment of error is overruled.

**{¶ 42}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.