[Cite as *State v. Folan*, 2019-Ohio-4624.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No. 18CA0096-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| KRISTINA FOLAN | | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 18TRC02188 |

DECISION AND JOURNAL ENTRY

Dated: November 12, 2019

TEODOSIO, Presiding Judge.

{¶1} Defendant-Appellant, Kristina Folan, appeals from the judgment of the Medina Municipal Court, denying her motion to suppress. This Court affirms.

I.

{¶2} Officer Ronald DeAmicis was traveling westbound on Route 303 when he spotted a vehicle ahead of him, traveling in the same direction. He saw the vehicle weave three times within its lane of travel before approaching the intersection of Route 303 and Route 42. The vehicle then proceeded northbound on Route 42, and Officer DeAmicis followed. When he saw the vehicle briefly weave again, he activated his lights and executed a traffic stop. He ultimately cited the driver, Ms. Folan, with two counts of operating a vehicle under the influence of alcohol ("OVI") and one count of weaving.

{¶3} Ms. Folan filed a motion to suppress, challenging the legality of her traffic stop. The trial court held a hearing on her motion and allowed the parties to file post-hearing briefs. It

then denied her motion, and Ms. Folan entered a plea of no contest. The court sentenced her to jail time, a fine, and probation, but agreed to stay the execution of her sentence for purposes of her appeal.

{¶4} Ms. Folan now appeals from the trial court's denial of her motion to suppress and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN CONCLUDING THAT THE OFFICER HAD REASONABLE, ARTICULABLE SUSPICION TO STOP MS. FOLAN'S VEHICLE WHEN THERE WAS NO EVIDENCE THAT SHE WAS OPERATING HER VEHICLE IN A "DEVIOUS, WINDING, OR ZIGZAG COURSE ESPECIALLY TO AVOID OBSTACLES." THE OFFICER'S ILLEGAL STOP OF MS. FOLAN'S VEHICLE VIOLATED HER FOURTH AMENDMENT AND OHIO CONSTITUTIONAL RIGHTS AGAINST UNREASONABLE SIEZURES (sic).

{¶5} In her sole assignment of error, Ms. Folan argues that the trial court erred when it denied her motion to suppress. Specifically, she argues that she was entitled to relief because Officer DeAmicis lacked reasonable suspicion to stop her vehicle. We disagree.

{¶6} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶7} "[A]n investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity." *State v.*

*Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10. "Reasonable suspicion is something less than probable cause * * *." *State v. Carey*, 9th Dist. Summit No. 28689, 2018-Ohio-831, ¶ 10. "To justify an investigative stop, an officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). *Accord Kordich* at ¶ 7, quoting *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 23 ("This Court has repeatedly recognized that '[a]n officer may stop a vehicle to investigate a suspected violation of a traffic law.'").

**{¶8}** The trial court found that Officer DeAmicis spotted Ms. Folan's vehicle shortly before 10:30 p.m. while traveling westbound on Route 303. The court found that, as she traveled westbound, Ms. Folan weaved three times within her lane of travel. Specifically, her vehicle drifted to the right and then to the left before once again drifting right and coming back to center. The court found that her tires never crossed entirely over either the fog line to her right or the dotted, passing line to her left, but touched both lines and "almost struck the curb." Ms. Folan then turned onto Route 42 and briefly weaved again within her lane of travel. The court found that, at the time of Officer DeAmicis' observations, there were no road or weather conditions that would have required Ms. Folan to operate her vehicle in the foregoing manner. It concluded that the officer's observations provided him with reasonable suspicion to stop Ms. Folan for a suspected violation of Brunswick Codified Ordinance 432.34(b).

{¶9} Ms. Folan argues that the trial court erred when it concluded that Officer DeAmicis possessed reasonable suspicion to stop her vehicle. She notes that his dashcam recording failed to capture any instances of weaving as she traveled northbound on Route 42. Further, she notes that the officer never used the terms "weaving" or "zigzagging" in his police report. Instead, he wrote that she was "drifting" within her lane of travel and never claimed to have seen jerky or erratic movement. Because inconsequential, momentary movement within one's lane of travel does not give rise to reasonable suspicion to initiate a traffic stop, Ms. Folan argues, the trial court erred by denying her motion to suppress.

{¶10} To facilitate our review, we begin by outlining the testimony and evidence presented at the suppression hearing. Officer DeAmicis testified that he was traveling westbound on Route 303 in the left-hand lane when he spotted Ms. Folan's vehicle ahead of his cruiser, traveling in the right-hand lane. As they proceeded toward Route 42, he saw Ms. Folan's vehicle weave three times within its lane of travel. First, she drifted to the right with her right-side tires crossing onto the fog line and coming "very close" to striking the curb (i.e., "within an inch or two"). Next, she "jerked back towards the dotted center line" of her lane with her left-side tires crossing about halfway onto that line. Finally, she drifted back to the right with the "very outside" of her right-side tires touching the fog line. At that point, Ms. Folan corrected her position and came back to center.

{¶11} Officer DeAmicis continued to follow Ms. Folan as she turned onto Route 42. He then saw her drift an additional time, activated his lights, and stopped her vehicle. Although his dashcam recorded the traffic stop, it did not capture any of the weaving activity that Officer DeAmicis observed while traveling westbound on Route 303. He explained that his cruiser's dashcam runs constantly, but only creates a recording if he activates his overhead lights. Once

the lights are activated, the system stores the footage, beginning with any events that occurred one minute before the activation of the overhead lights. Because the weaving that Officer DeAmicis observed on Route 303 occurred more than one minute before he activated his overhead lights, his dashcam recording did not capture that activity.

{¶12} Officer DeAmicis ultimately cited Ms. Folan with weaving, in violation of Brunswick Codified Ordinance 432.34(b), as well as several other charges. He acknowledged that, in his report of investigation, he described her vehicle movement as "drift[ing]" rather than zigzagging. Nevertheless, while testifying, he explained that Ms. Folan was weaving and that he equates drifting with zigzagging. He also described her weaving in detail, noting that she came within an inch of the curb before she "jerked back" toward the center line, touched it, and drifted back across to touch the fog line.

{¶13} Upon review, we must conclude that the record contains competent, credible evidence in support of the trial court's factual findings. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Consistent with the trial court's finding, Officer DeAmicis testified that he observed Ms. Folan weave three times within her lane of travel while driving westbound on Route 303. Although his dashcam recording did not capture that activity, he explained that it did not do so because he observed that activity more than a minute before activating his overhead lights. Whether that weaving actually occurred was, therefore, a factual issue best resolved by the trial court. *See id.* Because the testimony that Officer DeAmicis gave at the suppression hearing constitutes competent, credible evidence in support of the court's factual findings, we must accept those findings as true and proceed to an examination of its legal conclusion. *See id.*

{¶14} Brunswick Codified Ordinance 432.34(b) provides that "[n]o person shall operate a vehicle in a weaving or zigzag course unless such irregular course is necessary for safe

operation or in compliance with law." In examining a virtually identical ordinance, this Court specifically recognized that "'[w]eaving, even within a single lane of traffic, can justify an investigatory stop.'" *State v. Carver*, 9th Dist. Medina No. 2673-M, 1998 WL 65483, *2 (Feb. 4, 1998), quoting *State v. Myers*, 9th Dist. Summit No. 18292, 1998 WL 15599, *3 (Jan. 7, 1998), quoting *State v. Williams*, 86 Ohio App.3d 37, 43 (4th Dist.1993). *Accord Cuyahoga Falls v. Morris*, 9th Dist. Summit No. 18861, 1998 WL 487665, *2 (Aug. 19, 1998). *See also Erickson*, 76 Ohio St.3d at 11-12 (traffic stop constitutionally valid when officer possesses reasonable suspicion that any criminal violation has occurred). The trial court relied upon *Carver* in reaching its decision to deny Ms. Folan's motion to suppress, but she has made no attempt to distinguish that case herein. *See* App.R. 16(A)(7). As noted, officers need only have reasonable suspicion to conduct investigatory stops and any criminal violation, including minor traffic violations, can give rise to that suspicion. *See Erickson*, 76 Ohio St.3d at 11-12. Upon review, Ms. Folan has not shown that Officer DeAmicis lacked reasonable suspicion to stop her vehicle. *See Carver* at *2; *Morris* at *2. *See also Kordich*, 2017-Ohio-234, at ¶ 7, quoting *Slates*, 2011-Ohio-295, at ¶ 23. Accordingly, we reject her argument that the court erred by denying her motion to suppress. Ms. Folan's sole assignment of error is overruled.

III.

{¶15} Ms. Folan's sole assignment of error is overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶16} I respectfully dissent from the judgment of the majority. I would conclude that the drifting within the lane observed by the officer was insufficient to provide the officer with reasonable suspicion that Folan was violating Brunswick Codified Ordinance 432.34(b). I am troubled by the path this Court's case law has taken with respect to reasonable suspicion and suspected violations of ordinances involving weaving within a lane of travel. I do not dispute that the Supreme Court of Ohio has concluded that, "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable

suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 8. Nonetheless, I cannot conclude that every instance of a vehicle drifting within its lane over a short distance provides reasonable suspicion of a violation of an ordinance such as the one before this Court. The ordinance at issue, Brunswick Codified Ordinance 432.34(b), states: "No person shall operate a vehicle in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." Allowing police to stop drivers, who are observed to have momentarily drifted within their lane of travel during isolated instances, based upon the foregoing ordinance, and other similar ordinances, authorizes police to stop nearly every driver on the road. In my view, the ordinance, which prohibits a "weaving or zigzag course[,]" contemplates a substantial pattern of weaving or zigzagging, not isolated, innocuous instances. *Id.*

{¶17} However, I would nonetheless remand this matter to the trial court for it to consider whether the totality of the circumstances supported the conclusion that the officer possessed reasonable suspicion to stop the vehicle. From the discussion section of the trial court's entry, it appears that the trial court focused solely on the alleged violation of the ordinance as the basis for the stop. Other relevant facts pertaining to a dispatch about Folan and her vehicle, which the officer was aware of prior to initiating the stop, were also detailed at the suppression hearing. In fact, the trial court mentioned several of these facts in its findings of facts.[1]

Therefore, I respectfully dissent from the judgment of the majority.

---

[1] I note that the trial court's finding that the dispatch stated the subject vehicle was operating erratically is not supported by the record.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

J. MATTHEW LANIER, Prosecuting Attorney, for Appellee.