[Cite as *State v. Bullock*, 2017-Ohio-497.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2016-07-018 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 2/13/2017 |
| - vs - | | |
| | : | |
| AARON M. BULLOCK, | : | |
| | | |
| Defendant-Appellee. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. TRC1600819 A, B

Laura R. Gibson, Wilmington Prosecuting Attorney, 69 N. South Street, Wilmington, Ohio 45177, for plaintiff-appellant

Rose & Dobyns Co., LPA, Blaise S. Underwood, 97 N. South Street, Wilmington, Ohio 45177, for defendant-appellee

**S. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the decision of the Clinton County Municipal Court granting the motion to suppress filed by defendant-appellee, Aaron M. Bullock.  For the reasons outlined below, we reverse and remand for further proceedings.

{¶ 2} During the early morning hours of February 4, 2016, Deputy Traevon Williams with the Clinton County Sheriff's Office issued a citation to Bullock for operating a vehicle

while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2), both first-degree misdemeanors. Bullock then filed a motion to suppress alleging Deputy Williams' traffic stop of his vehicle was unlawful and in violation of the Fourth Amendment to the United States Constitution. After holding a hearing on the matter, the trial court granted Bullock's motion to suppress upon finding "no exception to the Fourth Amendment has been met by the evidence[.]" The state now appeals from the trial court's decision, raising a single assignment of error for review.

{¶ 3} THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS.

{¶ 4} In its single assignment of error, the state argues the trial court erred by granting Bullock's motion to suppress upon finding the traffic stop of his vehicle was unlawful and in violation of the Fourth Amendment to the United States Constitution. We agree with the state.

{¶ 5} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10. "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 12, quoting *Burnside*.

{¶ 6} Ohio recognizes two types of lawful traffic stops. *State v. Campbell*, 12th Dist. Butler Nos. CA2014-02-048 and CA2014-02-051, 2014-Ohio-5315, ¶ 25. The first type of lawful traffic stop is a noninvestigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31, citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wilmington v. Lubbers*, 12th Dist. Clinton No. CA2013-06-013, 2014-Ohio-3083, ¶ 12, quoting *Illinois v. Gates*, 462 U.S. 213, 243, fn. 13, 103 S.Ct. 2317 (1983). "The focus, therefore, is not on whether an officer could have stopped the suspect because a traffic violation had in fact occurred, but on whether the arresting officer had probable cause to believe that a traffic violation had occurred." *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 23, citing *State v. Terrell*, 12th Dist. Clinton No. CA99-07-020, 2000 WL 1591147 (Oct. 23, 2000).

{¶ 7} The second type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based upon specific or articulable facts that criminal behavior is imminent or has occurred. *Id.* at ¶ 33, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). While the concept of "reasonable and articulable suspicion" has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.), citing *Terry* at 20-21. The propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training." *Id.*, citing *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph two of the syllabus; and *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one

of the syllabus.

{¶ 8} At the hearing on Bullock's motion to suppress, Deputy Williams, the only witness called by either party, testified that at approximately 2:00 a.m. on the morning in question, he observed Bullock driving southbound on State Route 730 with his right hand turn signal on. However, instead of turning down the only available roadway to the right, Deputy Williams testified Bullock continued driving past that roadway for a "significant distance" of over 300 feet before eventually pulling off to the side of the road. According to Deputy Williams, Bullock then stopped his vehicle "straddling the solid white line," with his turn signal still on, for thirty seconds.

{¶ 9} Continuing, Deputy Williams testified he then observed Bullock pull back onto the road and make an almost immediate left hand turn, without signaling, going "completely off the road" and into a field, eventually coming to a stop in a nearby driveway. As Deputy Williams testified, Bullock "didn't attempt to get back onto the roadway or take the sharp turn into the driveway, he just continued straight through the field[.]" Deputy Williams further testified that "it wasn't far but it was off the roadway a considerable amount." Upon seeing Bullock drive off the road and into the field, Deputy Williams testified he turned on his overhead lights and initiated a traffic stop because he was concerned for Bullock's safety and "unsure if maybe he was under the influence or if he was suffering from a medical condition."

{¶ 10} After a thorough review of the record, we find the trial court erred by granting Bullock's motion to suppress. As can be seen, the record contains ample evidence to support, at the very least, a reasonable and articulable suspicion that criminal behavior is imminent or has occurred for Deputy Williams to initiate a lawful investigative traffic stop on Bullock's vehicle. As noted above, Deputy Williams observed Bullock driving southbound on State Route 730 during the early morning hours with his right-hand turn signal on, but not making the only right-hand turn available to him. Instead, Bullock drove for what Deputy

- 4 -

Williams characterized as a "significant distance" of over 300 feet before he pulled to the side of the road and stopped his vehicle, straddling the white line with his turn signal still on, for thirty seconds.

{¶ 11} These acts, while somewhat odd, may seem innocent enough when taken in isolation. However, after the thirty seconds elapsed, the record indicates Bullock then pulled back onto the road and made an almost immediate left hand turn, without signaling, driving completely off the road and into a field, eventually stopping in a nearby driveway. When considering the totality of the circumstances, from the perspective of Deputy Williams on the scene guided by his experience and training, these facts would certainly give rise to, at the very least, a reasonable and articulable suspicion that criminal behavior was imminent or had occurred to permit Deputy Williams to make a lawful investigatory traffic stop of Bullock's vehicle. Again, as Deputy Williams even testified, he initiated the traffic stop because he was concerned for Bullock's safety and "unsure if maybe he was under the influence or if he was suffering from a medical condition."

{¶ 12} As this court has expressed previously, a defendant need not actually be found guilty of an underlying traffic violation for the traffic stop to be considered lawful and the balance of the charges to remain valid. *See Pfeiffer*, 2004-Ohio-4981 at ¶ 23. Therefore, because Deputy Williams conducted, at a minimum, a lawful investigatory traffic stop of Bullock's vehicle, the trial court's decision granting Bullock's motion to suppress is reversed and this matter is remanded for further proceedings.

{¶ 13} Judgment reversed and remanded for further proceedings.

RINGLAND and M. POWELL, JJ., concur.