[Cite as *State v. Stover*, 2017-Ohio-9097.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-04-005 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>12/18/2017 |
| - vs - | : | |
| | : | |
| CHRISTINA E. STOVER, | : | |
| Defendant-Appellee. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI16-500-315


Richard W. Moyer, Clinton County Prosecuting Attorney, Lindsey M. Fleissner, 103 East Main Street, Wilmington, Ohio 45177, for plaintiff-appellant

Blaise Underwood, 97 North South Street, Wilmington, Ohio 45177, for defendant-appellee


**S. POWELL, P.J.**

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals from the decision of the Clinton County Court of Common Pleas granting a motion to suppress filed by defendant-appellee, Christina E. Stover.   For the reasons outlined below, we reverse and remand for further proceedings.

{¶ 2}   On November 7, 2016, the Clinton County Grand Jury returned an indictment charging Stover with aggravated possession and trafficking of methamphetamine, both third-

degree felonies, and aggravated possession of Hydrocodone, a fifth-degree felony. The charges arose after Police Officer Jeffrey Lennons with the Blanchester Police Department located methamphetamine and Hydrocodone in Stover's vehicle following her arrest for operating a vehicle while under the influence of drugs in August 2016.

{¶ 3} In December 2016, Stover filed her motion to suppress alleging her arrest and the subsequent search of her vehicle was unlawful. The trial court held a hearing and then granted Stover's motion to suppress upon finding the state failed to establish "a reasonable and articulable suspicion that [Stover] was under the influence or otherwise committing a crime" when Officer Lennons ordered her to perform field sobriety tests. The trial court further found that Officer Lennons violated Stover's right to counsel when he refused to allow Stover to have her attorney present during the administration of field sobriety tests.

{¶ 4} The state now appeals from the trial court's decision, raising two assignments of error for review.

{¶ 5} Assignment of Error No.1:

{¶ 6} THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT-APPELLEE WAS UNLAWFULLY SEIZED DUE TO THE FACT THAT THERE WAS NO REASONABLE ARTICULABLE SUSPICION TO DETAIN THE DEFENDANT-APPELLEE FOR STANDARDIZED FIELD SOBRIETY TESTS.

{¶ 7} In its first assignment of error, the state argues the trial court erred by granting Stover's motion to suppress upon finding there was no reasonable, articulable suspicion for Officer Lennon to detain Stover for purposes of conducting field sobriety tests. Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to

- 2 -

resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4 764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 8} Ohio recognizes two types of lawful traffic stops. *State v. Campbell*, 12th Dist. Butler Nos. CA2014-02-048 and CA2014-02-051, 2014-Ohio-5315, ¶ 25. The first type of lawful traffic stop is a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31, citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996). The second type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based upon specific or articulable facts that criminal behavior is imminent or has occurred. *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7, citing *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 33, in turn, citing *Terry v. Ohio*, 392 U.S.1, 21, 88 S.Ct. 1868 (1968).

{¶ 9} While the concept of "reasonable and articulable suspicion" has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.), citing *Terry* at 20-21. The reasonable suspicion standard under *Terry* "is an objective, not subjective, one." *State v. McCandlish*, 10th Dist. Franklin No.

- 3 -

11AP-913, 2012-Ohio-3765, ¶ 7. As a result, the propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training." *Baughman* at *id.*, citing *State v. Batchili*, 113 Ohio St. 3d 403, 2007-Ohio-2204, paragraph two of the syllabus and *State v. Bobo*, 37 Ohio St. 3d 177 (1988), paragraph one of the syllabus.

{¶ 10} At the hearing on Stover's motion to suppress, Officer Lennons – the only witness at the suppression hearing – testified that he responded to the local Kroger grocery store on a report that a blue vehicle in the parking lot had been parked for approximately two hours "occupied by a female who was nodding off and the vehicle was running." It is undisputed that the female in the vehicle was Stover.

{¶ 11} Upon arriving at the Kroger parking lot, Officer Lennons located the blue vehicle, exited his police cruiser, and walked up to the driver's side window. The vehicle's engine was running. Stover was in the driver's seat "laid back, reclined in the seat all the way back." Officer Lennons observed Stover "sweating profusely" and saw that she "was asleep. Her eyes were closed." Officer Lennons announced "very loudly" that he was with the Blanchester Police Department and began "pounding" on the window. Stover did not respond. Officer Lennons testified he continued knocking "fairly hard" on the window an additional five or six times, but failed to rouse Stover from her sleep. Officer Lennon stated that Stover's failure to wake up concerned him and made him suspect Stover was suffering from a potentially serious health issue or a possible overdose.

{¶ 12} After several minutes of knocking on the driver's side window, Stover woke up, she "sat up in the seat really quickly, grabbed her ignition keys, and then looked over and seen me standing there." Officer Lennons told Stover to open her door, which she did. After Stover opened the door, Officer Lennons described being "hit with a lot of heat coming from

inside the vehicle." Officer Lennons asked Stover why her heater was running since it was a "really hot" summer day, to which Stover said she "had an appointment to get it looked at." Stover also told Officer Lennons that she was sleeping in her vehicle because she was homeless.

{¶ 13} Officer Lennons sensed that "[Stover] didn't seem to want me there talking to her." He was concerned "that maybe [Stover] was under the influence of some sort or maybe there was some sort of medical condition." The Blanchester police chief arrived on the scene and noted that the vehicle had damage on the passenger side. As a result, Officer Lennons testified that his police chief instructed him to administer field sobriety tests to Stover to ensure that she was capable of operating her vehicle lawfully. Inexplicably, Officer Lennons also testified that he did not "have a suspicion" that Stover was under the influence of drugs or alcohol prior to conducting the field sobriety tests.

{¶ 14} Stover told Officer Lennons that she did not want to perform any of the tests without her attorney present. In response, Officer Lennons informed Stover that "she would be able to speak with her lawyer, but not at that point." Officer Lennons instructed Stover on how to perform the field sobriety tests. When asked if Stover was ever given the option not to perform the tests, Officer Lennons testified "[i]f she would have told me no, it would have ended."

{¶ 15} It is generally undisputed that Stover performed very poorly on each of the field sobriety tests, thereby indicating she was under the influence of drugs or alcohol. As a result, Officer Lennons placed Stover under arrest, handcuffed her, and sat her in the back of his police cruiser. Officer Lennons then went back to Stover's vehicle where he located various drugs and drug paraphernalia within the vehicle, including methamphetamine and Hydrocodone. A urine sample later revealed that Stover testified positive for methamphetamine and marijuana. As noted above, a grand jury later indicted Stover for

aggravated possession and trafficking of methamphetamine, as well as aggravated possession of Hydrocodone.

{¶ 16} After a thorough review of the record, this court finds there was ample evidence, in light of the totality of the surrounding circumstances, that would provide a reasonably prudent police officer in Officer Lennons' position with reasonable suspicion that Stover was engaged in criminal behavior. Thus, Officer Lennons could properly detain Stover for purposes of conducting field sobriety tests to ensure that she was capable of operating her vehicle lawfully. As noted above, Stover was observed "nodding off" in her vehicle while the engine was still running for approximately two hours before Officer Lennons arrived on the scene. Once there, Officer Lennons observed Stover reclined in the driver's seat of her vehicle, asleep and "sweating profusely," all while having the heater on despite it being a "very hot" summer day. The record further indicates that Stover remained in this unresponsive state for several minutes while Officer Lennons knocked on her driver's side window. The police chief noted damage to the vehicle's passenger side. Officer Lennon, therefore, was justified in his belief that Stover may have been suffering from a potentially serious health issue or a possible overdose. These facts support a finding of a reasonable, articulable suspicion to detain Stover for purposes of conducting field sobriety tests to ensure that she was capable of operating her vehicle lawfully.

{¶ 17} In granting Stover's motion, the trial court placed great weight on Officer Lennons' testimony that he did not "have a suspicion" that Stover was under the influence of drugs or alcohol prior to conducting field sobriety tests. However, as noted above, the record also demonstrates that Officer Lennons testified he "had concerns about Stover, specifically testifying he was concerned "that maybe she was under the influence of some sort or maybe there was some sort of medical condition." Regardless, as stated previously, "the standard is objective," and therefore, "the officer's own subjective belief or conclusion regarding the

existence of reasonable suspicion is not relevant." *McCandlish*, 2012-Ohio-3765 at ¶ 9 (affirming trial court's decision denying motion to suppress even though the arresting officer may have believed he did not have sufficient grounds to stop appellant's vehicle). Moreover, although much of Stover's conduct could be considered legal, "[e]ven legal conduct, or facts that might be given an innocent construction, may, under some circumstances, justify a reasonable suspicion that criminal activity is afoot." *State v. Wells*, 12th Dist. Warren CA2014-10-133, 2015-Ohio-2828, ¶ 10. That is the case here when reviewing Stover's odd behavior. In sum, a reasonably prudent police officer in Officer Lennons' position would have a reasonable, articulable suspicion of criminal behavior sufficient to detain Stover for purposes of conducting field sobriety tests. Therefore, the court should not have granted Stover's motion to suppress and this court sustains the state's first assignment of error.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT-APPELLEE'S RIGHT TO COUNSEL WAS VIOLATED WHEN SHE WAS NOT ALLOWED TO HAVE HER ATTORNEY PRESENT DURING FIELD SOBRIETY TESTS.

{¶ 20} In its second assignment of error, the state argues the trial court erred by granting Stover's motion to suppress upon finding that Officer Lennons violated Stover's right to counsel by refusing to allow Stover to have her attorney present during the administration of field sobriety tests. According to Stover, Officer Lennons' actions violated R.C. 2935.20, a statute that provides, in pertinent part:

> After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to

practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

Whoever violates this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both.

R.C. 2935.20, therefore, criminalizes the act of failing to provide an attorney in the foregoing circumstances and imposes either a fine or term of imprisonment for such a violation.

{¶ 21} In OVI cases, the Ohio Supreme Court held that the imposition of the exclusionary rule does not lie as a remedy for a violation of an accused's statutory right to counsel. *State v. Griffith*, 74 Ohio St.3d 554 (1996). In turn, "[t]he exclusionary rule is not applicable as a sanction for a violation of R.C. 2935.20." *State v. Arnold*, 12th Dist. Butler No. CA99-02-026, 1999 Ohio App. LEXIS 4159, *14 (Sept. 7, 1999); *State v. Sebastian*, 12th Dist. Butler No. CA96-10-204, 1997 Ohio App. LEXIS 1458, *4 (Apr. 14, 1997) ("the exclusionary rule is not a permissible sanction for any violation of that statute"). Additionally, the administration of standardized field sobriety tests is not a "critical stage" of the prosecution implicating the constitutional right to counsel as provided by the Sixth Amendment to the United States Constitution. *See McNulty v. Curry*, 42 Ohio St.2d 341, 345 (1975). Therefore, this court concludes that the trial court erred by granting Stover's motion to suppress on the basis that Officer Lennons refused to allow Stover to have her attorney present during field sobriety tests. Again, even if a violation of Stover's statutory right to counsel occurred, suppression of the field sobriety test results is not an appropriate remedy. *State v. Turner*, 11th Dist. Portage No. 2007-P-0090, 2008-Ohio-3898, ¶ 27; *City of Twinsburg v. Lacerva*, 9th Dist. Summit No. 23849, 2008-Ohio-550, ¶ 7. This court sustains the state's second assignment of error.

{¶ 22} Judgment reversed and remanded for further proceedings.

RINGLAND, J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

#### First Assignment of Error

{¶ 23} I agree with the majority's analysis as to the first assignment of error. Officer Lennons' initial contact led him to believe Stover was either suffering from a medical condition or she had experienced an overdose on drugs. As his contact continued, objectively, the reason to believe Stover was suffering from a medical condition gradually declined and the reason to believe she was under the influence of something that impaired her driving abilities increased.

{¶ 24} Officer Lennons' statements during his testimony give an appearance of inconsistency when considered in isolation. Yet a reasonably prudent officer in the totality of the unfolding circumstances would clearly possess a reasonable and articulable suspicion of Stover being under the influence of a substance rendering her unsuitable to operate a motor vehicle. This is evident by the police chief's arrival on the scene and directive to Officer Lennons to initiate a field sobriety test particularly after observing damage to Stover's vehicle.

#### Second Assignment of Error

{¶ 25} I concur with the majority's result concerning the second assignment of error, but I disagree with the majority opinion in its implication that R.C. 2935.20 could apply to a field sobriety test before police take a person into custody. Similarly, I disagree that the inherent authority of a court, in its administration of justice, can offer no remedy for a clear violation of R.C. 2935.20.

R.C. 2935.20 Is Not Applicable to a Field Sobriety Test

{¶ 26} A field sobriety test is not testimonial in nature and the request to submit to

- 9 -

such a test is merely a preparatory step in the initiation of a law enforcement investigation. *State v. Arnold*, 12th Dist. Butler No. CA99-02-026, 1999 Ohio App. LEXIS 4159, *3 (Sept. 7, 1999). A request to take a field sobriety test does not implicate the Fifth nor the Sixth Amendments. *Id.*, *see also State v. Perez*, 1st Dist. Hamilton Nos. C-040363, C-040364, and C-040365, 2005-Ohio-1326, ¶ 13-18 (holding that there is no right to counsel at a field sobriety test). Should an individual refuse to participate in a field sobriety test, then the law enforcement officer involved may detain the individual, take into custody, and transport that person to an appropriate facility for a breathalyzer, blood, or urine test.

{¶ **27**} R.C. 2935.20 only applies "*[a]fter* the arrest, detention, or any *other* taking *into custody of a person.*" (Emphasis added.) Terms followed by a catchall phrase linked by the word *other* are conjoined. *State v. Vaduva*, 2d Dist. Greene No. 2015-CA-27, 2016-Ohio-3362, ¶ 25. The term "other" in conjunction with the phrase "taking into custody" is indicative of legislative intent and requires that the previous terms only embrace similar things of the same character. *Id.* (discussing the rule of construction eiusdem generis). *See also State ex rel. Barno v. Crestwood Bd. of Edn.*, 134 Ohio App.3d 494, 505 (11th Dist.1998) (holding that the sequence of terms is not necessarily controlling; discussing conjoined terms per eiusdem generis). The meaning of "detention" therefore must be similar to when a person is arrested or taken into custody. Because the request for a field sobriety test does not require a person be taken into custody, I would find R.C. 2935.20 inapplicable when an officer conducts a field sobriety test.

{¶ **28**} A significant aspect of the judiciary's role in upholding the law is to give effect to a statute with a paramount concern for its intent without rendering the statute meaningless or inoperative. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, Slip Opinion No. 2017-Ohio-8348, ¶ 14. Clearly, the purpose of R.C. 2935.20 is that when an individual loses free will and volition resulting in the type of restraint associated with a formal arrest,

that individual has a statutory right to have access to facilities so to contact or communicate with an attorney or another person of choice toward securing an attorney. An in-custody detention does not occur upon the request to perform a field sobriety test.

R.C. 2935.20 Remedies

{¶ 29} The federal exclusionary rule does not apply to a statutory right violation. Yet at least one court has suggested a statutory violation by law enforcement of R.C. 2935.20 violates the constitutional guarantee to due process of state law and that a motion in limine may be appropriate. *City of Lakewood v. Waselenchuk*, 94 Ohio App.3d 684, 689 (8th Dist.1994). *But cf. State v. Layton*, 111 Ohio App.3d 76 (10th Dist.1996). After all, the statutory right to counsel pursuant to R.C. 2935.20 goes beyond the right to counsel secured by the federal and state constitutions. *State v. Downing*, 2d Dist. Greene No. 2001-CA-78, 2002 Ohio App. LEXIS 1306, *8 (Mar. 22, 2002). Therefore, a court should be allowed to consider the suppression of evidence as a remedy for a R.C. 2935.20 violation on a case-by-case basis, driven by the facts. *City of Lakewood; City of Fairborn v. Mattachione*, 72 Ohio St.3d 345, 346-347 (1995) (Wright, J., dissenting with Moyer and Pfeiffer, J.J., joining).

{¶ 30} In conclusion, I agree with the majority judgment but would hold that R.C. 2935.20 is inapplicable to a field sobriety test. Therefore, there is no need to discuss the exclusionary rule or what other remedies might be available. I also disagree with the implication that when R.C.2935.20 is applicable, a clear violation of that statute can never permit a court to implement a remedy should justice so require.