[Cite as *State v. Egnor*, 2020-Ohio-327.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-05-042 |
| | : | O P I N I O N |
| - vs - | | 2/3/2020 |
| | : | |
| MICHAEL EGNOR, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34428

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

David A. Chicarelli Co., LPA, David A. Chicarelli, 614 E. Second Street, Franklin, Ohio 45005, for appellant

**RINGLAND, P.J.**

{¶ 1} Appellant, Michael Egnor, appeals the decision of the Warren County Court of Common Pleas denying his motion to suppress. For the reasons outlined below, we affirm.

{¶ 2} On June 22, 2018, Egnor was issued a citation for improperly turning at an intersection in violation of R.C. 4511.36(A)(3), driving under suspension in violation of R.C. 4510.11(A), and for operating a motor vehicle while under the influence of alcohol ("OVI").

As a result of the citation, a complaint was filed charging Egnor with felony OVI. Thereafter, Egnor was indicted in the Warren County Court of Common Pleas for two counts of OVI. Each count included a specification that Egnor had been convicted of or pleaded guilty to five or more equivalent offenses within 20 years of committing the instant offense. The charges arose after Officer Clevenger with the Springboro Police Department initiated a traffic stop of a vehicle Egnor was driving after he observed Egnor commit what the officer believed was at least one, if not more, traffic violations. Egnor later submitted to a breath-alcohol test that indicated he had a breath-alcohol-content of .162.

{¶ 3} On October 5, 2018, Egnor moved to suppress the results of the breath-alcohol test. In his motion, Egnor argued that Officer Clevenger did not have probable cause to stop Egnor's vehicle, and no reasonable suspicion existed for Egnor to be pulled over. On December 19, 2018, the trial court held a hearing on Egnor's motion. Officer Clevenger and Egnor testified at the hearing. Officer Clevenger's testimony was supplemented by a video recording of the traffic stop, which was taken from Officer Clevenger's cruiser camera.

{¶ 4} At the hearing, Officer Clevenger testified that on June 21, 2018 around 11:40 p.m. he was approaching a red light at the intersection of North Main Street and Tamarack Trail when he observed a vehicle turn from Tamarack Trail northbound onto North Main Street. As the vehicle was turning left, the officer observed the vehicle "drif[t] from the left-hand straight lane towards the right-hand straight lane and straddl[e] the center line for a short distance before getting all the way into the left-hand straight lane." The vehicle caught Officer Clevenger's attention because such a turn is a "violation for turning at intersections" and there was nothing in the road which the vehicle may have been trying to avoid.

{¶ 5} It is undisputed that Egnor was the driver of the vehicle in question. It is also undisputed that due to the position of Officer Clevenger's cruiser at the stop light, the cruiser

video does not show the entirety of Egnor's turn or the alleged violation. Rather, Officer Clevenger testified he observed Egnor's turn from the driver's side window of his cruiser.

{¶ 6} Immediately after observing Egnor straddle the center line while turning, Officer Clevenger made a U-turn at the intersection and began to follow Egnor northbound on North Main Street. This is supported by the cruiser video. While following Egnor, Officer Clevenger indicated "[t]here were a few instances of [Egnor] weaving within his lane of travel" in violation of a Springboro ordinance.[1] Officer Clevenger testified "[i]t looked like a couple times" Egnor went over the lines and at one point, Egnor weaved within an intersection "where it looked like [Egnor] would've been over the center line if the center line was there." Officer Clevenger further indicated he noticed a change in Egnor's speed while the officer was following him but did not exceed the speed limit. The officer stated he had witnessed individuals under the influence of alcohol driving in such a fashion.

{¶ 7} Near the end of his testimony, the trial court asked Officer Clevenger to narrate his observations while watching the video taken from his cruiser camera. During his narration, Officer Clevenger indicated he saw Egnor drift over and straddle the center line, resulting in his U-turn. Although the car behind Egnor entered the right-hand side of the roadway after turning, the officer was more concerned with Egnor's straddling of the center line, which Officer Clevenger testified tends to show an intoxicated driver. According to Officer Clevenger, "a lot of people turn into [the right-hand] lane. Most of the time they're not intoxicated. When someone straddles the lane, that's more of a sign of intoxication to me in my training and experience." He then narrated the following: "Right here is where I believe he went over the center line and goes back over to this side, which is the [weaving] for our ordinance. And, then he drifts over a little bit going up here in this intersection. He's more

- 3 -

towards that center line and there's a lot more room on the left-hand side. * * * [A]t this point I've determined I'm going to do a traffic stop on him, but I'm waiting until we get up a little bit and pass this intersection."

{¶ 8} As a result of Egnor's turn at the intersection and weaving within his lane of traffic, Officer Clevenger pulled Egnor over. Egnor was cited under R.C. 4510.11(A) for driving with a suspended license, R.C. 4511.36(A)(3) for "turns at intersections" and "OVI." According to Officer Clevenger, he did not cite Egnor for violating the Springboro weaving ordinance because Egnor had "several prior offenses for OVI," which meant the offense "had to be heard through county court or municipal court" and there is no corresponding weaving statute in the Ohio Revised Code. As such, Officer Clevenger indicated that but for Egnor's prior OVI offense, he would have cited Egnor for violating the Springboro ordinance.

{¶ 9} Egnor denied weaving into the right-hand lane when he turned left onto Main Street. However, while testifying on cross-examination, Egnor admitted he swerved within his own lane of traffic to both sides.

{¶ 10} After the hearing, the trial court issued a written opinion denying Egnor's motion to suppress. In its decision, the trial court found that Officer Clevenger witnessed a traffic violation and then stopped Egnor for that traffic violation. The trial court further stated that "[b]ased on the testimony of the officer and an independent review of the cruiser camera, the Court cannot say the stop is pretextual. Considering all the circumstances, a reasonable officer would have made the stop in a same or similar fashion."

{¶ 11} On March 4, 2019, Egnor entered a plea of no contest to the charges of the indictment. After a hearing, the trial court accepted Egnor's no contest plea and entered a finding of guilty. The trial court then sentenced Egnor to two years in prison, ordered a

---

1. Springboro Codified Ordinance 432.38(b) states: No person shall operate a vehicle in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law. Subsection (d)

license suspension of ten years, and imposed a $1,350 fine. The imposition of Egnor's sentence was stayed pending appeal.

{¶ 12} Egnor timely filed his appeal, raising one assignment of error for our review.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT IN WARREN COUNTY ERRED BY CONVICTING MICHAEL EGNOR OF DRIVING UNDER THE INFLUENCE WHEN THE WEIGHT OF THE EVIDENCE SHOWED THAT HE WAS PULLED OVER BASED ON A PRETEXTUAL STOP AND WAS CITED UNDER THE WRONG STATUTE ORC 4511.36(A)(3), RESULTING IN ALL EVIDENCE THEREAFTER BEING INADMISSIBLE.

{¶ 15} Egnor argues the trial court erred in denying his motion to suppress because the weight of the evidence presented at the suppression hearing showed he was pulled over based on a pretextual stop and was cited under the incorrect statute.

{¶ 16} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-

indicates whoever violates any provision of this section is guilty of a misdemeanor.

- 5 -

Ohio-3353, ¶ 12.

{¶ 17} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. "Ohio recognizes two types of lawful traffic stops." *State v. Stover*, 12th Dist. Clinton No. CA2017-04-005, 2017-Ohio-9097, ¶ 8. The first involves a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *Id.*, citing *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31. "The second type of lawful traffic stop is an investigative stop, also known as a Terry stop, in which the officer has reasonable suspicion based on specific or articulable facts that criminal behavior is imminent or has occurred." *Id.*, citing *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7. See also *Moore* at ¶ 33, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

{¶ 18} While the concept of "reasonable and articulable suspicion" has not been precisely defined, "[t]he reasonable-suspicion standard is less demanding than the probable-cause standard when used analyzing an arrest." *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). See also *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.) (describing the reasonable-suspicion standard as "something more than an undeveloped suspicion or hunch but less than probable cause"). The determination of whether an officer had reasonable and articulable suspicion to initiate an investigative stop "must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Hairston* at ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 19} After a thorough review of the record, we find no error in the trial court's decision denying Egnor's motion to suppress. We further find that the trial court did not err by finding Officer Clevenger properly initiated a traffic stop of Egnor's vehicle after he observed Egnor commit what he believed was a traffic violation.

{¶ 20} Egnor initially argues that the stop was unconstitutional because the officer incorrectly cited Egnor for violating R.C. 4511.36(A)(3). The statute, which relates to turns made at intersections where traffic is restricted to one direction, provides as follows:

> At any intersection *where traffic is restricted to one direction on one or more of the roadways*, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane of the roadway being entered lawfully available to traffic moving in that lane.

R.C. 4511.36(A)(3). (Emphasis added.). According to Egnor, due to the nature of North Main Street, he only could have been cited under R.C. 4511.36(A)(2), which applies to turns made at intersections where traffic is permitted to move in both directions. That statute states the following:

> At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

R.C. 4511.36(A)(2). As a result, Egnor argues the stop was unconstitutionally premised on the officer's mistake of law.

{¶ 21} Egnor further contends that even if he had been cited under the proper statute,

R.C. 4511.36(A)(2), the plain language of that statute "does not prohibit a driver from turning into the outside, right lane instead of the inside left lane." In support, Egnor relies on *State v. Kirkpatrick*, 1st Dist. Hamilton Nos. C-160880, C-160881 and C-160882, 2017-Ohio-7629, ¶ 13. In *Kirkpatrick*, the First District Court of Appeals held that R.C. 4511.36(A)(2) is clear and unambiguous, and "simply requires the driver 'square into the turn' as we are all taught in driver's education class. * * * Under the plain language of the statute, a turn into either side is perfectly legal." *Id.* As such, Egnor concludes he did not commit a moving violation and therefore, Officer Clevenger initiated an improper stop.

{¶ 22} It is undisputed that North Main Street allows traffic to flow in both directions, making R.C. 4511.36(A)(2) applicable in this case. However, we find that whether the officer cited the correct subsection of the statute on the ticket is inconsequential to whether Officer Clevenger had an objectively reasonable suspicion that a violation had occurred. *State v. Stassman*, 4th Dist. Athens No. 98 CA 10, 1998 Ohio App. LEXIS 5626, n. 5 (Nov. 20, 1998). Rather, we find it significant that Officer Clevenger observed Egnor straddling the center lane when making his left-hand turn, which the officer believed to be an improper turn at the intersection in violation of R.C. 4511.36.

{¶ 23} Furthermore, despite Egnor's reliance on *Kirkpatrick*, other appellate courts in Ohio have indicated that an officer has a reasonable articulable suspicion that a defendant violated the law if the officer observes the defendant execute a left-hand turn into the far-right lane. *See State v. Connelly*, 6th Dist. Wood No. WD-13-080, 2014-Ohio-2688, ¶ 22; *State v. Graham*, 9th Dist. Lorain No. 13CA010489, 2014-Ohio-3283, ¶ 27. We further note that the holding in *Kirkpatrick* referred to instances distinguishable from the case at hand, as *Kirkpatrick* dealt specifically with a defendant who turned directly into the right-hand lane. Here, Egnor did not turn into the right-hand lane after completing his turn. Rather, the record

reflects Egnor began his left turn, drifted toward the right-hand lane, straddled the center lane for "a short distance," then returned to the left-hand lane. Egnor has provided no case law which states that either R.C. 4511.36(A)(2) or (3) permits a driver to temporarily drift toward the right-hand lane and straddle the center line for some time after making a left-hand turn.

{¶ 24} Moreover, even if Officer Clevenger was mistaken in his belief that a traffic violation had occurred, "a police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop." *State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 19, citing *Kirkpatrick* at ¶ 6; see also *State v. Petty*, 4th Dist. Washington Nos. 18CA26 and 18CA27, 2019-Ohio-4241, ¶ 27 ("Although R.C. 4511.36[A][2] does not prohibit a left turn into the far right lane, [the trooper's] belief that [appellant's] turn violated the statute is an objectively reasonable mistake of law in this case"). Considering the apparent district split regarding violations of R.C. 4511.36(A) when making left-hand turns, we find Officer Clevenger's belief that Egnor committed an infraction by drifting over the center line after turning constitutes an objectively reasonable mistake of law in this case.

{¶ 25} Lastly, we reject Egnor's argument that the officer's testimony regarding the left-hand turn was insufficient evidence of the alleged traffic violation. Specifically, although Officer Clevenger's dashcam recording did not capture the alleged activity, he explained that he observed Egnor's improper turn from the driver's side window of his cruiser, prior to completing the U-turn and following Egnor's vehicle. Whether Egnor actually straddled the center line as alleged by the officer was a factual issue best resolved by the trial court. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Furthermore, despite Egnor's contention otherwise, Officer Clevenger indicated he initiated the stop based upon Egnor's turn at the intersection and his observation that Egnor was weaving within his own lane in

violation of a Springboro ordinance. Specifically, the officer stated Egnor went over the lines "a couple times" and at one point, weaved within an intersection. The officer's testimony was corroborated by the video and was not disputed by Egnor. It is well established that even minor traffic violations can provide an officer with a reasonable articulable suspicion justifying a traffic stop. *City of Dayton v. Erickson*, 76 Ohio St. 3d 3, 11-12 (1996). Likewise, although Egnor was not cited for violating the Springboro ordinance, traffic stops based upon traffic violations which did not result in a citation can also provide an officer a reasonable articulable suspicion justifying a traffic stop. See *State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 17. This court has held that weaving, even within a single lane of traffic, can be sufficient basis to make an investigatory stop if the totality of the circumstances surrounding the stop support a conclusion that the officer had a reasonable suspicion that the defendant was involved in criminal activity at the time of the stop. *City of Middletown v. Myers*, 12th Dist. Butler No. CA97-04-085, 1997 Ohio App. LEXIS 4729, *5-6 (Oct. 27, 1997); see also *State v. Folan*, 9th Dist. Medina No. 18CA0095-M, 2019-Ohio-4624, ¶ 14. As a result, despite evidence that Egnor was not cited for violating the Springboro weaving ordinance, we find the totality of the circumstances surrounding the stop support that Officer Clevenger had a reasonable suspicion that Egnor was involved in criminal activity at the time of the stop.

{¶ 26} As such, in view of the totality of the circumstances, including Officer Clevenger's observation that Egnor drifted to the right-hand lane and straddled the center line for some time after turning, weaved several times within his lane of traffic, and went over the lines "a couple of times" while weaving, we find that the officer had, at a minimum, a reasonable suspicion that Egnor was operating the vehicle in violation of the law. As a result, we find the trial court reasonably concluded that the traffic stop was not unconstitutional and properly denied Egnor's motion to suppress. Therefore, Egnor's assignment of error is

overruled.

{¶ 27} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.