[Cite as *State v. Davis*, 2025-Ohio-4620.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-01-008 |
| | : | OPINION AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 10/6/2025 |
| WILLIAM DAVIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-06-0801

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Defendant, William Davis, appeals the decision of the Butler County Court of Common Pleas denying his motion to suppress. For the reasons discussed below we affirm.

## I. Factual and Procedural Background

{¶ 2}   On September 6, 2023, Davis was indicted on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A), a fifth-degree felony.

{¶ 3}   In January 2024, Davis filed a motion to suppress evidence. In his motion, Davis argued that the police officer who discovered the drugs lacked reasonable, articulable suspicion or probable cause to effectuate the traffic stop and that the subsequent warrantless search of his vehicle violated the Fourth Amendment. The trial court conducted an evidentiary hearing on the suppression motion on February 6, 2024. The police officer who pulled over Davis testified for the State, and Davis testified on his own behalf. The testimony established the following facts.

{¶ 4}   On May 28, 2023, at approximately 10:00 a.m., Officer Connor Beel of the Middletown Police Department was working his patrol shift when he observed a vehicle driven by (the officer would later learn) Davis. Officer Beel initially saw Davis's car pull into the driveway of a residence, which Officer Beel knew to be associated with narcotics activity. A woman exited Davis's vehicle, and Davis drove away. Officer Beel followed the vehicle.

{¶ 5}   At the intersection of Windsor Avenue and Cincinnati Dayton Road, Officer Beel observed Davis's vehicle stop at a stop sign with the front wheels positioned past the stop bar painted on the road. Based on this observation, Officer Beel activated his overhead lights and initiated a traffic stop of Davis's vehicle along Cincinnati Dayton Road. Davis was the sole occupant of the vehicle.

{¶ 6}   Upon approaching the vehicle's left side, Officer Beel engaged Davis in conversation. Davis stated that he had just dropped off a woman named "Megan." When Officer Beel asked whether there was anything illegal in the vehicle, Davis looked to his

right, hesitated, and then stated there was nothing illegal present. Officer Beel testified that based on Davis's response and demeanor, he believed Davis was "possibly lying." Officer Beel told Davis of his suspicion, at which point Davis reached into an open lunch box inside the vehicle. Officer Beel instructed Davis to stop reaching into the lunch box. Davis then told Officer Beel that he was "trying to grab his marijuana." Davis voluntarily handed Officer Beel a blue bag containing marijuana and stated that he possessed a medical-marijuana card, though he acknowledged the card had expired.

{¶ 7} After another officer arrived to provide backup, Officer Beel conducted a search of the vehicle. Inside Davis's lunch box, Officer Beel discovered a silver capsule-like container. Upon opening the container, Officer Beel observed a crystal-like substance. The entire encounter, from the traffic stop until Davis handed over the marijuana, occurred within approximately five to six minutes and represented Officer Beel's initial approach to the vehicle before any backup arrived. Officer Beel charged Davis with possession of drugs in violation of R.C. 2925.11 as well as violating Middletown Ordinance 414.01 for disobedience to traffic-control devices, the painted stop bar.

{¶ 8} During the suppression hearing, the defense introduced three photographic exhibits of the intersection. Defense Exhibit B was described as a satellite photograph of the intersection of Windsor Road and Cincinnati Dayton Road. Officer Beel testified that this photograph fairly and accurately represented the intersection on May 28, 2023, and that regarding the stop line depicted, "about three-fourths of that line [was] still bold" and "[t]he majority of that line [was] visible." Defense Exhibit C was another photograph of the same intersection. Officer Beel testified that he was not certain this photograph fairly and accurately represented the intersection on May 28, 2023, and that he could see only a portion of the stop line, which he described as faded. Defense Exhibit D was a photograph taken by Davis approximately one month after the May 28, 2023 incident. Davis testified

that this photograph fairly and accurately depicted the stop line's condition. During the hearing, Davis testified that Defense Exhibits B and C were Google Maps images that he believed were taken six months before May 28, 2023. But Davis admitted during cross-examination that none of the photographs were dated, and that he had previously been convicted of tampering with evidence.

{¶ 9} Based on the evidence presented at the suppression hearing, the trial court, on February 12, 2024, overruled Davis's motion to suppress, concluding that Officer Beel had reasonable, articulable suspicion to effectuate the stop based on his observation of the stop-bar violation and that the subsequent search fell within the automobile exception to the warrant requirement.

{¶ 10} On December 3, 2024, Davis pleaded no contest to the charge of aggravated possession of drugs.[1] The trial court sentenced him to serve a term of community control for two years.

{¶ 11} Davis appealed.

## II. Analysis

{¶ 12} The single assignment of error alleges:

> The trial court erred in overruling Defendant-Appellant's motion to suppress.

{¶ 13} Davis argues the trial court erred in denying his motion to suppress evidence seized during the search of his vehicle because Officer Beel lacked reasonable suspicion to stop him for a traffic violation. We disagree.

{¶ 14} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 2007-Ohio-3353, ¶ 12 (12th Dist.). We are

---

1. Although Davis initially signed a guilty-plea form, during the plea hearing he specifically stated his intention to plead no contest rather than guilty. The trial court accepted Davis's no-contest plea and found him guilty as charged in the indictment. On May 6, 2025, the trial court filed a nunc pro tunc entry correctly reflecting Davis's no-contest plea.

bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 2005-Ohio-6038, ¶ 10 (12th Dist.). But we review the trial court's application of the law to those facts de novo, determining "without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

## A. Constitutional Framework for Traffic Stops

{¶ 15} "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable traffic stops." *State v. Hentenaar*, 2020-Ohio-4503, ¶ 9 (12th Dist.), citing *Bowling Green v. Godwin*, 2006-Ohio-3563, ¶ 11. The benchmark for Fourth Amendment analysis is reasonableness. *Id*.

{¶ 16} Traffic stops fall into two categories. First, non-investigatory stops occur when an officer has probable cause to believe a traffic violation has been committed. *State v. Stover*, 2017-Ohio-9097, ¶ 8 (12th Dist.). Second, investigatory stops are permissible when an officer has reasonable, articulable suspicion based on specific facts that criminal behavior has occurred or is imminent. *Id*. Reasonable, articulable suspicion requires "something more than an undeveloped suspicion or hunch, but less than probable cause." *Id*. at ¶ 9.

## B. The Initial Traffic Stop Was Constitutionally Valid

{¶ 17} Davis contends that Officer Beel lacked reasonable, articulable suspicion for the traffic stop because photographic evidence demonstrates the stop line was too faded to provide an objective basis for believing he failed to comply with traffic-control requirements. This argument fails both factually and legally.

{¶ 18} The evidence establishes that Officer Beel observed Davis's vehicle with "the front wheels of his vehicle were past that stop bar" at the intersection of Windsor

Road and Cincinnati-Dayton Road. This testimony was uncontroverted. While Davis introduced Defense Exhibits B, C, and D showing varying degrees of fading in the stop line, Officer Beel testified that even in the most faded photograph, "about three-fourths of that line [was] still bold" and "[t]he majority of that line [was] visible." The trial court, as trier of fact, was in the best position to evaluate witness credibility and resolve factual disputes. The court's finding that Officer Beel observed a stop-line violation is supported by competent, credible evidence.

{¶ 19} The critical inquiry is not whether Davis actually violated the traffic laws, but whether Officer Beel had an objectively reasonable basis for believing a violation occurred. *See Godwin*, 2006-Ohio-3563, at ¶ 14 ("Probable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, 'viewed from the standpoint of an objectively reasonable police officer.'"), quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *State v. Akers*, 2016-Ohio-7216, ¶ 16 (7th Dist.) ("The test is not whether Appellant 'substantially complied' with the posted stop sign, but whether probable cause [or a reasonable and articulable suspicion] existed from the perspective of the police officer.").

{¶ 20} Officer Beel charged Davis under Middletown Ordinance 414.01, which prohibits disobeying traffic-control devices. The State correctly notes that Davis's motion to suppress challenged his violation of R.C. 4511.43(A), not the municipal ordinance under which he was actually cited. Nevertheless, both legal theories support the stop's validity.

{¶ 21} Under R.C. 4511.43(A), drivers must "stop at a clearly marked stop line" when one exists. The statute does not require a "bold" stop line as Davis suggests, but rather a "clearly marked" one. Officer Beel's testimony that the majority of the stop line remained visible, combined with his observation of Davis's front wheels crossing that line,

provides an objectively reasonable basis for the stop under either the municipal ordinance or state statute.

{¶ 22} Even when drivers might successfully defend against traffic citations, officers' reasonable observations of apparent violations justify investigatory stops. Accordingly, Officer Beel's uncontroverted testimony about Davis's wheel position provides the necessary reasonable, articulable suspicion, and indeed probable cause, for the initial stop.

### C. The Continued Detention Was Justified by Additional Suspicious Circumstances

{¶ 23} Davis argues that Officer Beel should have terminated the stop upon approaching the vehicle and observing the faded condition of the stop line. This contention lacks merit for several reasons.

{¶ 24} First, Officer Beel retained reasonable suspicion based on his original observation regardless of the stop line's condition on closer inspection. The fact that the line showed some fading does not negate Officer Beel's reasonable observation that Davis's wheels had crossed it.

{¶ 25} Second, during the initial contact, Officer Beel discovered additional facts supporting continued detention. When asked whether the vehicle contained anything illegal, Davis "looked to his right, hesitated, and then looked back" before denying the presence of contraband. Officer Beel reasonably interpreted this behavior as potentially deceptive.

{¶ 26} As we have said, officers may extend traffic stops when they discover "additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop." *State v. Waldroup*, 100 Ohio App.3d 508, 513 (12th Dist. 1995). Davis's evasive behavior during questioning provided

such additional facts, justifying continued detention beyond the time necessary to address the traffic violation.

### D. The Vehicle Search Was Valid Under the Automobile Exception

{¶ 27} The search of Davis's lunch box presents the most straightforward issue in this case. Davis voluntarily produced marijuana from the lunch box and acknowledged possessing an expired medical-marijuana card. This voluntary production of contraband provided Officer Beel with probable cause to search the vehicle.

{¶ 28} "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." (Citations omitted.) *State v. Moore*, 90 Ohio St.3d 47, 51, 2000-Ohio-10. And when probable cause supports searching a vehicle, it "'justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" *State v. Lynn*, 2018-Ohio-3335, ¶ 17 (12th Dist.), quoting *United States v. Ross*, 456 U.S. 798, 825 (1982).

{¶ 29} Davis's voluntary production of marijuana from his lunch box provided Officer Beel with probable cause to believe the vehicle contained additional contraband. Ohio courts have consistently held that "a vehicle occupant's production of drugs gives a police officer probable cause to believe the vehicle contains evidence of contraband." *State v. Gartrell*, 2014-Ohio-5203, ¶ 59 (3d Dist.); *see also State v. Maddox*, 2021-Ohio-586, ¶ 19-20 (10th Dist.) (voluntary surrender of marijuana provides probable cause for vehicle search under automobile exception); *State v. Young*, 2012-Ohio-3131, ¶ 32-34 (12th Dist.) (admission of concealed marijuana in vehicle provides probable cause for vehicle search under automobile exception).

{¶ 30} Davis's argument that Officer Beel's initial suspicion was merely a "hunch" becomes irrelevant once Davis voluntarily produced the marijuana. At that point, probable

cause existed independent of any subjective impressions about Davis's truthfulness. The subsequent discovery of the silver capsule containing crystalline substance in the same lunch box was entirely proper under the automobile exception.

{¶ 31} The search's scope was appropriately limited to areas where contraband might reasonably be concealed. Officer Beel searched the lunch box from which Davis had voluntarily produced marijuana, discovering the silver capsule in the same container. This search fell well within the permissible scope under *Ross* and its progeny.

### III. Conclusion

{¶ 32} Davis's assignment of error is overruled. The evidence supports the trial court's determination that Officer Beel's traffic stop, continued detention, and vehicle search complied with Fourth Amendment requirements. Officer Beel had reasonable, articulable suspicion and probable cause for the initial stop based on his observation of Davis's apparent stop-line violation. The detention's continuation was justified by Davis's evasive behavior during questioning. Most significantly, Davis's voluntary production of marijuana provided clear probable cause for the vehicle search under the automobile exception.

{¶ 33} The trial court's judgment is affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge